IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 CR 595 |
| | ) | |
| KEENAN R. FERRELL and | ) | Judge Virginia M. Kendall |
| BRYCE WOODS | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

A federal Grand Jury indicted Defendants Keenan R. Ferrell and Bryce Woods in a nine count Indictment charging that Ferrell and Woods engaged in a scheme to defraud Medicare in violation of 18 U.S.C. § 1347. Prior to the start of jury selection the Government filed motions in limine (Docs. 100 and 122), a motion to narrow the Indictment (Doc. 124), a motion to admit evidence pursuant to Federal Rule of Evidence 801(d)(2)(E) and *United States v. Santiago* (Doc. 103)*,* and a motion to introduce evidence of Defendants' conduct and statements (Doc. 135). Defendant Ferrell filed motions in limine (Docs. 107, 118, and 136) and also moved to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(2) on the basis that 18 U.S.C. § 1347 is unconstitutionally vague as it is applied to him (Doc. 140). The Court addresses each of these motions below.

## BACKGROUND

The Indictment alleges that Defendants, through Ferrell's companies Take Action and Inner Arts, engaged in a scheme to defraud Medicare. Specifically, Ferrell, a licensed clinical psychologist, submitted claims to Medicare for providing one-on-one psychotherapy sessions lasting 45-50 minutes to Medicare beneficiaries when, in fact, these sessions lasted for a

significantly shorter period of time or did not occur at all. Additionally, Ferrell employed psychology graduate students, other health care providers, and Defendant Woods to provide psychotherapy sessions to patients at various nursing homes. Take Action and Inner Arts then allegedly billed Medicare as if Ferrell provided the patients with the psychotherapy sessions himself. Due to this alleged conduct, the Government has charged the Defendants with violating 18 U.S.C. § 1347.

On May 9, 2013, the Court held a final pretrial conference to address the motions in limine filed by the United States and by Defendant Keenan Ferrell. Defendant Bryce Woods was also present at the final pre-trial conference and his counsel raised oral objections to certain of the Government's motions in limine. However, during the conference the Government informed the Court that Dr. Thomas Shriver, an associate of Ferrell's, had agreed to proffer in a separate case in Texas and was interested in cooperating against Ferrell. At a hearing the next day, the Government informed the Court that Shriver would act as a cooperating witness. The Court then granted Ferrell's motion to reset the trial date so the parties could raise any issues with respect to Shriver's testimony. The Government and Defendant Ferrell then both moved the Court for a ruling on the admissibility of Dr. Shriver's testimony. Finally, despite the fact that the Grand Jury returned the Indictment against him in December 2011, Ferrell moved to dismiss the indictment two weeks before jury selection was scheduled to begin.

## DISCUSSION

### I.    Motion to Dismiss the Indictment

#### A.    Legal Standard

Federal Rule of Criminal Procedure 12(b)(2) provides that the Court may consider at the pretrial stage "any defense, objection, or request that the court can determine without a trial of the

general issue."  A motion to dismiss an indictment is properly brought pursuant to Rule 12(b)(2) where the government, as a matter of law, is incapable of proving beyond a reasonable doubt the charges against the defendant, or where the government has violated the defendant's constitutional rights or has committed constitutional error in the prosecution of an indictment. *See United v. Levin,* 973 F.2d 463, 468 (6th Cir. 1992); *see also United States v. Linder,* No. 12 CR 122, 2013 WL 812382, at *28 (N.D. Ill. Mar. 5, 2013).  Federal courts also possess the power and duty to dismiss indictments obtained in violation of the Constitution and the laws of the United States.  *See Linder,* 2013 WL 812382, at *26 (collecting cases).

Here, Ferrell argues that the Indictment should be dismissed because it was obtained in violation of the Constitution since Title 18 U.S.C. § 1347 is unconstitutionally vague.  To be sufficiently vague so as to violate due process rights a statute must: (1) fail to provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited or (2) fail to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing the statute.  *See United States v. Plummer,* 581 F.3d 484, 488 (7th Cir. 2009) (citing *United States v. Lim,* 444 F.3d 910, 915 (7th Cir. 2006); *United States v. Stephenson,* 557 F.3d 449, 455-56 (7th Cir. 2009)).  A vagueness challenge is analyzed as-applied unless First Amendment interests are threatened.  *See id.* at 488.  Since none are threatened here, the Court will analyze Ferrell's challenge as the statute is applied to him.

**B.      Title 18 U.S.C. § 1347 Is Not Unconstitutionally Vague As Applied to Ferrell**

Ferrell appears to challenge the constitutionality of 18 U.S.C. § 1347 under both prongs of the vagueness doctrine: (1) it failed to provide him with fair notice of what constituted prohibited conduct under the statute and (2) it authorizes or encourages arbitrary and discriminatory enforcement.  Specifically, he contends that the language of 18 U.S.C. § 1347(b)

eliminates the *mens rea* requirement articulated in 18 U.S.C. § 1347(a) so that he is now exposed to prosecution for errors contained in the claims he submitted to Medicare despite the fact that he never intended to defraud the Government.  This argument is contradicted by the plain language of the statute.

Title 18 U.S.C. § 1347(a) provides that "[w]hoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—

(1) to defraud any health care benefit program; or

(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control, any health care benefit program,

in connection with the delivery of or payment for health care benefits, items or services, shall be fined under the this title or imprisoned not more than 10 years, or both.  Title 18 U.S.C. § 1347(b) provides that "[w]ith respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section."

The "knowingly and willfully" language in § 1347(a) requires the Government to prove that a defendant acted with specific intent to defraud or misrepresent in order to prove that a defendant violated the statute.  *See, e.g., United States v. Franklin-El,* 554 F.3d 903, 911 (10th Cir. 2009) ("the health care fraud statute requires a specific intent to defraud or misrepresent"); *United States v. Patel,* 485 Fed. Appx. 702, 708 (5th Cir. 2013) (holding that to prove fraud under § 1347, the Government must establish the defendant acted "knowingly and willfully, that is, with a specific intent to defraud"); *United States v. Janati,* 237 Fed. Appx. 843, 947 (4th Cir. 2007) ("The health care fraud statute requires a specific intent to defraud"); *cf United States v. Choiniere,* 517 F.3d 967, 973 (7th Cir. 2008) (holding that district court properly instructed the jury on the elements necessary to convict under 18 U.S.C. § 1347 including instructions that

stated: (1) "The defendant must act with intent to defraud"; (2) "the government needs to prove both that there was a scheme to defraud and that [defendant] participated in the scheme knowingly and with intent to defraud"; and (3) that intent to defraud means "that the acts charged were done knowingly with the intent to deceive or cheat the victims in order to cause a gain of money or property to the defendant.").

The language of § 1347(b) does not obviate this requirement. Rather, when Congress amended the statute in 2010 to include § 1347(b)[1], it simply clarified that the Government does not need to prove that a defendant was aware of the existence of or specifically intended to violate § 1347 (as opposed to specifically intending to defraud Medicare) in order to be held liable for violating § 1347. The impetus for this amendment is an opinion issued by the Ninth Circuit that interpreted the "willfulness" requirement in the analogous Federal Anti-Kickback statute in a narrow and specific manner. In *The Hanlester Network v. Shalala,* the Ninth Circuit construed the phrase "knowingly and willfully" to require a finding that a defendant: (1) knew that the Anti-Kickback statute prohibited offering or paying remuneration to induce referrals; and (2) engaged in prohibited conduct with the specific intent to disobey the Anti-Kickback statute. *See The Hanlester Network v. Shalala,* 51 F.3d 1390, 1400 (9th Cir. 1995). No other circuit joined the Ninth Circuit in imposing these stringent requirements on the Government. *Compare, e.g., United States Baystate Ambulance & Hospital Rental Services, Inc.,* 874 F.2d 20 (1st Cir. 1989) (holding that "knowing" means to do something voluntarily or deliberately and "willfully" means to do something the law prohibits); *United States v. Jain*, 93 F. 3d 436, 440-41 (8th Cir. 1996) (holding that the plain language of the Anti-Kickback Statute and the traditional principle of ignorance of the law is no defense defines "willfully" to mean the defendant "knew that his

---

[1] The statute was amended with the passage of the Patient Protection and Affordable Care Act of 2010 to include § 1347(b).

conduct was wrongful, rather than proof that he knew it violated a known duty."); *United States v. Starks*, 157 F.3d 833, 837-39 (11th Cir. 1998) (holding that knowledge of the Anti-Kickback statute was not required to find a violation); *United States v. Davis*, 132 F.3d 1092, 1094 (5th Cir. 1998) (same);

When Congress amended the health care fraud and anti-kickback statutes in 2010, it codified the majority view and rejected the Ninth Circuit's position with respect to what is required to prove a violation of § 1347 and the Anti-Kickback Statute. As a result, it drafted subparagraph (b) to specifically state that the Government does not need to prove that a defendant has specific knowledge of § 1347 or intent to specifically violate § 1347 in order to successfully prosecute an individual who engaged in a scheme with the intent to defraud Medicare. *See* 18 U.S.C. § 1347(b) (stating that a defendant does not need to have "actual knowledge of *this section*," i.e., § 1347, or "specific intent to commit a violation of *this section*," i.e., § 1347, in order to be liable for violating § 1347) (emphasis added). Indeed, Senator Ted Kaufman, one of the amendment's authors, explained this to Congress when he introduced the bill. Specifically, Senator Kaufman stated that:

> The bill also addresses confusion in the case law over the appropriate meaning of "willful" conduct in health care fraud. Both the anti-kickback statute and the health care fraud statute include the term "willfully." In both contexts, the Ninth Circuit Court of Appeals has read the term to require proof that the defendant not only intended to engage in unlawful conduct, but also knew of the particular law in question and intended to violate that particular law. This heightened mental state requirement may be appropriate for criminal violations of hyper-technical regulations, but it is inappropriate for these crimes, which punish simple fraud. The Finance Committee health care reform bill, America's Healthy Future Act, addresses this problem for the anti-kickback statute, but not for the general health care fraud offense. Accordingly, the Health Care Fraud Enforcement Act tracks the Finance bill and clarifies that "willful conduct" in this context does not require proof that the defendant had actual knowledge of the law in question or specific intent to violate that law. As a result, health care fraudsters will not receive special protection that they don't deserve.

155 Cong. Rec. S10852-01 (daily ed. Oct. 28, 2009). Thus, it is clear that subparagraph (b) does not eliminate the *mens rea* requirement described in subparagraph (a), it clarifies it. *See also, e.g., United States v. Mathur*, No. 11 CR 312, 2012 WL 4742833, at *14-15 (D. Nev. Sept. 13, 2012) (describing legislative history of the Patient Protection and Affordable Care Act and stating that "PPACA has not removed a specific intent requirement from the Anti-Kickback Act as Mathur claims. In order to prove a violation of the Anti-Kickback Act, the government must still show that a criminal defendant acted 'knowingly and willfully'". . . . The PPACA simply clarified that the government is not required to show a criminal defendant knew the Anti-Kickback Act prohibited offering or paying consideration to induce referrals and intended to violate the law.").[2]

Title 18 U.S.C. § 1347 does not allow the Government to hold Ferrell liable for unintentional inaccuracies as he contends; rather, the Government must still prove that: (1) Ferrell knowingly engaged in a scheme to defraud; (2) that he acted with intent to defraud; and (3) that he knew that participation in the scheme was unlawful. However, the Government does not need to prove that Ferrell specifically knew his alleged conduct violated 18 U.S.C. § 1347 or that he specifically intended to violate 18 U.S.C. § 1347. As a result, Title 18 U.S.C. § 1347 is clear and not unconstitutionally vague as it applies to Ferrell. *See Franklin-El,* 554 F.3d at 911 (holding that a specific intent requirement eliminates objections that a statute punishes a

---

[2] The Government contends that the Ninth Circuit also extended *Shalala's* holding to § 1347 in *United States v. Awad,* 551 F.3d 930, 939-40 (9th Cir. 2009) and *United States v. Dearing,* 504 F.3d 897, 901 (9th Cir. 2007). However, this Court does not read *Awad* and *Dearing* to define "willfulness" in Section 1347 in the same manner *Shalala* defined willfulness with respect to the Anti-Kickback Statute. However, it is clear that Congress believes they did, which is why it enacted the clarifying amendment with respect to both statutes. See 155 Cong. Rec. S10852 ("*In both contexts,* the Ninth Circuit Court of Appeals has read the term to require proof that the defendant not only intended to engage in unlawful conduct, but also knew of the particular law in question and intended to violate that particular law. ") (emphasis added).

defendant for an offense for which he was unaware) (quoting *United States v. Stewart,* 872 F.2d 957, 959 (10th Cir. 1989)). [3]

## II.     The Government's Motions in Limine

### A.     Motion to Introduce Limited Excerpts of Statements to Law Enforcement

The Government's first motion in limine (Doc. 100 at 1-8) is to introduce excerpts of each Defendant's Statement to Law Enforcement and to Bar Introduction by the Defense of the Remainder of Each Statement.  The motion seeks permission to introduce certain excerpts of statements Defendants Ferrell and Woods made to law enforcement agents on June 2, 2011.  It also asks the Court to bar introduction by either Defendant of any self-exculpatory portion of either of these statements as well as any exculpatory statements made by Defendant Woods in a November 22, 2011 voicemail message he left for David O'Brien, Ferrell's prior counsel.  The motion is granted in part and taken under advisement in part to be addressed at trial.

As an initial matter, the parties agree that the statements the Government intends to offer do not implicate *Bruton v. United States,* 391 U.S. 123 (1968).  Under *Bruton,* the admission of a defendant's confession at a joint trial may violate a co-defendant's right to confrontation if the confession also names the co-defendant.  *See id.*  However, where the Government elicits only those portions of a confession that do not implicate the confessor's co-defendant, no *Bruton* issue exists.  *See Richardson v. Marsh,* 481 U.S. 200, 208 (1987) (holding that a confession that is redacted to omit references to a co-defendant who is on trial is admissible at a joint trial.); *United*

---

[3] The Government also argues that the use of CPT codes in Medicare billing does not render the statute vague. However, the Court does not find Ferrell's motion to have made this argument originally.  Rather, Ferrell references the ambiguities in CPT coding to highlight how the purported reduction of the *mens rea* requirement in § 1347(b) could impact him.  Regardless, ambiguities in CPT manuals or codes cannot be a basis for a due process challenge since Ferrell is charged with violating § 1347, not a CPT manual.  *See Janati,* 237 Fed. Appx. at 846-47 (rejecting constitutional challenge to 18 U.S.C. § 1347 based on vagueness of CPT manuals because "the fact remains that [the defendants] were charged with violating the health care fraud statute, 18 U.S.C. § 1347, not the CPT manual. . . . [a]ny vagueness in the CPT manual itself cannot be the basis for a due process challenge to the fraud violations in this case.").

*States v. Javell,* 695 F.3d 707, 711 (7th Cir. 2012) (stating that there is no violation of the Confrontation Clause where the admission of a non-testifying co-defendant's statement is redacted to eliminate the defendant's name and any reference to his or her existence) (internal citations omitted). The Government has represented that it will elicit only those statements that implicate the confessor and to avoid any accusations leveled against the co-defendant. Based on this representation, the Court finds that *Bruton* will not preclude the admission of these statements.

The Defendants do not object to the introduction of the excerpts identified by the Government; however, they object to the exclusion of the remainder of the statements, including any exculpatory statements, based on the rule of completeness. Federal Rule of Evidence 106 provides that "a complete statement is required to be read or heard when it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure fair and impartial understanding." *United States v. Lewis,* 641 F.3d 773, 785 (7th Cir. 2011). However, the rule does not require admission of statements that are "neither explanatory of nor relevant to the admitted passages." *Id.* Moreover, a party cannot use the doctrine to circumvent Rule 803's exclusion of hearsay testimony. *Id.* (rejecting defendant's attempt to cross-examine officers about the omitted portions of his post-arrest statement); *United States v. Vargas,* 689 F.3d 867, 876 (7th Cir. 2012) (affirming district court's decision to not admit portion of arrest video under rule of completeness as it was inadmissible hearsay). A party's self-serving, exculpatory, out-of-court statement generally constitutes inadmissible hearsay. *See United States v. Doxy,* 225 Fed. Appx. 400, 402 (7th Cir. 2007) ("Typically, a party's self-serving, exculpatory, out-of-court statement is inadmissible hearsay."). As a result, the Defendant's may only elicit testimony regarding any exculpatory statements if there is an

applicable exception to the hearsay rule that would permit their admission. The Court will not hypothesize at this time whether or not certain hearsay exceptions could potentially apply with respect to certain statements. If the Defendants wish to elicit testimony regarding specific exculpatory statements at trial, they are directed to raise the issue with the Court outside of the presence of the jury before beginning their inquiry. Therefore, the Government's motion is granted in part and taken under advisement in part.

### B.  Motion to Bar Defense from Introducing Recorded Statements

The Government's second motion in limine (Doc. 100 at 9-10) is to bar the defense from introducing any recorded statements made by Provider A. Defendant Ferrell has also filed a motion in limine for these statements to be admitted. William Woods, an individual who worked for Defendant Ferrell and is the brother of Defendant Woods, left a voicemail message for and wrote an e-mail to Defendant Ferrell's prior counsel, David O'Brien, on or about July 29, 2011. In the voice message and e-mail, William Woods generally asserts that he was responsible for the Medicare claims submitted by Defendant Ferrell's companies, Take Action and Inner Arts Inc., and Defendant Ferrell is not. The Government's motion is granted and Dr. Ferrell's motion is denied for the reasons set forth below.

There is no dispute that these statements are hearsay, the relevant question is whether they are admissible under the exception to the hearsay rule in Federal Rule of Evidence 804(b)(3). This rule provides that an out of court statement is admissible to prove to the truth of the matter asserted if: (1) the declarant's statement is against the declarant's interest; (2) corroborating circumstances exist that bolster the trustworthiness of the declarant's statement; and (3) the declarant is unavailable as a witness. *See* Fed. R. Evid. 804(b)(3); *United States v. Nagib,* 56 F.3d 798, 804 (7th Cir. 1995). The burden rests on the proponent of the hearsay

statement to demonstrate that each element is satisfied. *See United States v. Jackson,* 540 F.3d 578, 588 (7th Cir. 2008). Moreover, Rule 804(b)(3) does not allow the admission of self-exculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. *Williamson v. United States,* 512 U.S. 594, 600-01 (1994); *Nagib,* 56 F.3d at 804. The Court must separate inculpatory statements from exculpatory statements and only admit the inculpatory statements. *See Nagib,* 56 F.3d at 804.

It appears that William Woods is unavailable as a witness because he intends to invoke his Fifth Amendment rights if he is called to testify. *See Nagib,* 56 F.3d at 804 ("The government concedes that Dumont, through his counsel, asserted his Fifth Amendment privilege against self-incrimination and was therefore unavailable to testify."). However, the statements do not comply with the other requirements of Rule 804(b)(3). First, the statements themselves do not appear to be against the declarant's interest. The only statements that could potentially be construed to be against interest are Woods's statements that he did not complete the documentation that would support the claims submitted by Defendant Ferrell to Medicare in a timely fashion. However, insufficient documentation is not the basis for the fraud charge in this case. Rather, Ferrell is charged with submitting claims to Medicare for services that were never provided or for services that were provided by unlicensed individuals. The remainder of the statements are exculpatory statements as to Defendant Ferrell and not are against William Woods's interests. (*E.g.,* July 29th Voicemail from Woods to O'Brien, Doc. 120, Ex. A. [stating that Ferrell "loves the law" and that Woods wants "to implore these investigators to know that Dr. Ferrell did nothing wrong"]; July 29th E-mail from Woods to O'Brien, Doc. 120, Ex. B ["Dr. Ferrell consistently speaks about the importance of ethics and the value of working within the

policies and guidelines that have been set forth by Medicare."].)  Therefore, since the voicemail and e-mail do not contain statements against interest, they are inadmissible under Rule 804(b)(3).

Even if the voicemail and the e-mail contained statements that could be construed to be statement's against interest, no corroborating circumstances exist that would bolster the trustworthiness of the statements.  Ferrell argues that corroborating circumstances exist because Woods voluntarily called Ferrell's previous counsel "perhaps due to the weight of the guilt upon his conscience, to admit his wrongdoing."  (Doc. 107 at 3.)  However, this is contradicted by Woods's other statements in the July 29th e-mail.  In that e-mail, Woods repeatedly states that Ferrell, Bryce Woods and William Woods all acted honestly, repeatedly contacted the relevant Medicare fiscal intermediary to ensure that their practices were proper and blames the Government and Medicare for allowing the conduct to occur for so long if it was, indeed, improper.  (*E.g.,* Doc. 120, Ex. B ["Both Bryce and I were in constant contact with Medicare specialists checking on claims, verifying services, checking on remittances, clarifying policies regarding documentation, supervision, credentials needed, etc.  We were never told there was a problem, and were told we were in compliance" and "Bryce and I are both prepared to speak with the prosecutor to testify that neither Dr. Ferrell, nor any of us involved in the company were purposefully defrauding Medicare.  We were not aware of any problem either with our services, or our billing."].)  These statements demonstrate that William Woods does not believe he should be held responsible for the claims submitted either.  Indeed, they directly contradict his statements that documentation problems were his fault.  Therefore, to the extent that William Woods's voicemail can be construed to contain statements against interests, the corroborating circumstances do not indicate the statements are trustworthy.  Thus, they must be excluded.  *See United States v. Crayton,* 455 Fed. Appx. 688, 690 (7th Cir. 2011) ("Corroborating

circumstances must clearly indicate that the statement is trustworthy, or the statement must be excluded.").

### C.    Motion to Bar Evidence of Penalties to be Imposed Upon Conviction

The Government's third motion in limine (Doc. 100 at 10-11) is to bar evidence or argument by Defendants of the possible penalties they face if convicted. This motion is granted by agreement of the parties.

### D.    Motion to Receive Notice of R. 608(b) impeachment

The Government's fourth motion in limine (Doc. 100 at 11-12) is for prior notice concerning Rule 608(b) impeachment. This motion is granted by agreement of the parties.

### E.    Motion to Bar Discovery Disputes in Front of the Jury

The Government's fifth motion in limine (Doc. 100 at 13) is to bar discovery requests or comments regarding discovery in the jury's presence. This motion is granted for the reasons set forth in open court.

### F.    Motion to Use Progress Notes

The Government's sixth motion in limine is for a pretrial ruling on the admissibility of Inner Arts and Take Action Progress Notes. (Doc. 122 at 1-7.) The progress notes will be admitted for the reasons set forth in open court. The only objection to the admissibility of the notes was that they constituted hearsay. However, pursuant to Federal Rule of Evidence 801(d)(2)(D), the notes are not hearsay because they are statement made by the Defendant's agents or employees "on a matter within the scope of that relationship and while it existed." Moreover, even if the notes were hearsay, they would still be admissible as business records under the exception to the hearsay rule in Federal Rule of Evidence 803(6).

### G. Motion to Bar Speculation Testimony

The Government's seventh motion in limine is to bar cross-examination of government witnesses asking those witnesses to speculate as to Defendant Ferrell's knowledge. (Doc. 122 at 7-10.) This motion is granted on a preliminary basis for the reasons set forth in open court; however, the parties are directed to raise any specific objections at trial.

## III. The Government's *Santiago* Proffer

The Government also moved for the admission of certain coconspirator statements made against Defendants Ferrell and Woods pursuant to *United States v. Santiago,* 582 F.2d 1128 (7th Cir. 1998). (Doc. 103.) These statements include: (1) oral statements Defendant Ferrell made to students for recruitment; (2) oral statements Defendant Ferrell made to students, Defendant Woods and Provider A regarding Inner Arts and Take Actions' provision of services; (3) oral statements Defendant Woods and Provider A made to nursing home employees, to students and other Inner Arts employees, and to Inner Arts and Take Action's officer manager; (4) text messages Defendant Woods and Provider A sent to Employee A; and (5) business pitch letters sent to nursing homes around the country. The motion is granted for the reasons set forth in open court. Namely, the *Santiago* proffer sufficiently established the parameters of the conspiracy and these statements were all allegedly made in furtherance of the conspiracy.

## IV. The Government's Motion to Introduce Evidence of Defendants' Conduct and Statements

Prior to the May 9, 2013 final pre-trial conference, Ferrell filed a motion in limine (Doc. 118) that sought to bar evidence of alleged out of state Medicare schemes pursuant to Federal Rule of Evidence 404(b). During the conference, the Court asked the Government what specific evidence, if any, did the motion seek to bar. The Government identified three categories of evidence: (1) Medicare billing records from Texas; (2) Medicare provider applications from

Florida, Indiana, New Mexico and Texas; and (3) testimony by Dr. Thomas Herbert Shriver regarding statements allegedly made by Ferrell and regarding Ferrell and Woods's practice of providing psychotherapy sessions in Texas. As described above, the Government then explained that Dr. Shriver had just agreed to proffer in a separate case in Texas and was interested in cooperating against Ferrell. At a hearing the next day, the Government informed the Court that Shriver would act as a cooperating witness.

On May 24, 2013, the Government filed a motion (Doc. 135) that seeks the admission of the three categories of evidence described above. On the same day, Ferrell filed another motion in limine (Doc. 136) that seeks to bar the testimony of Dr. Shriver. For the reasons set forth below, the Government's motion is granted in part and taken under advisement in part. The Defendant's motions are denied.

The Defendants are charged with committing health care fraud in violation of 18 U.S.C. § 1347. To commit health care fraud, a defendant must knowingly and willfully execute, or attempt to execute a scheme or artifice: (1) to defraud any health care benefit program; or (2) to obtain, by means of false of fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program in connection with the delivery of or payment for health care benefits, items, or services. *See* 18 U.S.C. § 1347; *United States v. Davis,* 471 F.3d 783, 785 n. 1 (7th Cir. 2006); *United States v. Bek,* 493 F.3d 790, 801 (7th Cir. 2007). The Government alleges that the Defendants engaged in a scheme to defraud Medicare by: (1) submitting claims to Medicare for psychotherapy sessions that purportedly occurred within the Northern District of Illinois that lasted 45-50 minutes when, in fact, those sessions lasted less than half an hour, if they occurred at all; and (2) submitting claims to Medicare for psychotherapy sessions that purportedly occurred within the Northern

District of Illinois and were purportedly conducted by Ferrell when, in fact, those sessions were conducted by either unlicensed, unsupervised psychology students or by the unlicensed Woods brothers. Ferrell's defense of the case appears to be that he was not aware that these practices were occurring nor was he aware that claims were submitted to Medicare for these psychotherapy sessions.

While Federal Rule of Evidence 404(b) prohibits the admission of prior bad acts to show that the defendant's character is consistent with a propensity to commit the charged crime, it is axiomatic that direct evidence of the alleged conduct charged in the case is always admissible subject to Rule 403's balancing analysis. *See United States v. Boone,* 628 F.3d 927, 933-35 (7th Cir. 2010); *United States v. Gorman,* 613 F.3d 711, 719 (7th Cir. 2010). However, when evidence is offered to prove the existence of a charged scheme, only evidence the same scheme as opposed to a related or distinct scheme is admissible. *See Boone,* 628 F.3d at 935. The evidence that the Government's motion seeks to admit all constitutes direct evidence of the fraudulent scheme charged in this case and that Ferrell participated in the scheme knowingly and with intent to defraud.

### A.     The Proposed Testimony of Dr. Thomas Shriver

The Government proposes to elicit testimony from Shriver relating to four categories of information. First, that Ferrell told Shriver that Ferrell ran a practice treating nursing home patients who lived in several states, and that Ferrell used students, Defendant Woods, and William Woods to see patients at the nursing home. Second, that Shriver arranged with Ferrell for Ferrell to conduct psychotherapy sessions with nursing home patients in Texas but that Ferrell began to send the Woods brothers instead to conduct these sessions. Neither Woods brother was licensed to practice psychology or psychotherapy in Texas. Third, that when Shriver

called Ferrell to complain about the practice of sending the Woods brothers, Ferrell told Shriver that the Woods brothers could visit with patients because they had done so before in other states. Finally, Ferrell told Shriver that he was in need of money so he was billing for work done by students and the Woods brothers.

Ferrell's alleged admissions to Shriver that he used the Woods brothers and students to visit patients and that he billed for those sessions is directly relevant to the scheme charged. It directly contradicts Ferrell's defense that he was unaware these practices were occurring. Therefore, it tends to prove that Ferrell participated in the scheme knowingly and with intent to defraud. Ferrell's alleged statement regarding his financial needs is also direct evidence of his motive to engage in the scheme charged.

Even if this evidence did constitute evidence of prior bad acts, it would still be admissible under Rule 404(b)(2). While Rule 404(b) bars admission of evidence of uncharged crimes or acts to prove that a person acted in conformity therewith, the evidence may be admissible for other purposes such as to prove motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake, or lack of accident. *See* Fed. R. Evid. 404(b)(2). When determining whether evidence is admissible for another purpose, courts consider whether: (1) the evidence is offered for a purpose other than to show a defendant's propensities to commit crime; (2) the other act is similar enough and close enough in time to the charged crime to be relevant to the stated purpose; (3) the evidence is sufficient to support a finding that the defendant committed the uncharged prior act; and (4) as mandated by Rule 403, the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice. *See United States v. Foster,* 652 F.3d 776, 784-85 (7th Cir. 2011).

Shriver's testimony would be offered to show that Ferrell had knowledge of the alleged scheme and acted with the intent to defraud the Government. In addition, it shows Ferrell's motive to commit the fraud. Shriver's proposed testimony all relates to acts that occurred contemporaneously to the acts allegedly committed in Illinois. The schemes are similar in that in both schemes Ferrell allegedly used other unlicensed individuals, such as the Woods brothers, to conduct psychotherapy sessions at nursing homes and then billed Medicare for the sessions as if Ferrell had been the one who actually conducted the session. Finally, while this evidence is obviously prejudicial to the Defendants, the probative value of this evidence is powerful. It shows that Ferrell was aware unlicensed providers were conducting psychotherapy sessions in his name. It shows that Ferrell knew claims were submitted to Medicare for these services. It shows that Ferrell intended for these claims to be submitted to be Medicare because he needed money. Finally, it shows that Ferrell's motive to commit the fraud was the result of his financial needs. Because the probative value of this evidence is powerful, it is not substantially outweighed by the risk of unfair prejudice. Accordingly, the admission of this testimony will not fun afoul of Rule 403.

**B.** **The Medicare Billing Records Seized from Shriver's Office**

The Medicare billing records and documents that were seized from Shriver's office that show that Ferrell submitted claims to Medicare for services allegedly provided in other states is evidence that is directly relevant to the conduct charged in this case. Specifically, the Government intends to use Medicare billing records from Texas showing that Ferrell's Medicare billing numbers were used to submit claims to Medicare for psychotherapy sessions that Ferrell conducted in Texas. The Government intends to offer this evidence to establish that the Defendants over-billed Medicare because the documents will purportedly show that Ferrell billed

Medicare for sessions that he allegedly personally conducted in Texas on the same day that he also billed Medicare for sessions that he allegedly personally conducted in Illinois. This is directly relevant to the Government's case because a fact finder could reasonably conclude that Ferrell did not personally conduct sessions in both states on the same day due to the distance between Illinois and Texas. Therefore, this evidence is admissible.

### C. Medicare Applications

Additionally, the Government intends to use Medicare applications submitted by Ferrell to be allowed to bill Medicare for services provided in Florida, Texas and New Mexico, as well as Illinois. The Government contends that these applications will show that Ferrell was aware of the Medicare Rules and Regulations and certified that he would comply with all such rules and regulations. This evidence is relevant to show that Ferrell was aware of Medicare's requirements for proper billing and, therefore, that he acted knowingly. They are also relevant to show that Ferrell continued to act with intent throughout the entire period of the charged scheme. However, even though these applications are relevant, Rule 403 provides that evidence may be excluded if the probative value is substantially outweighed by a risk that unfair prejudice will result if a party needlessly presents cumulative evidence. Fed. R. Evid. 403; *see also United States v. Howard,* 692 F.3d 697, 707 (7th Cir. 2012).

## V. Defendant Keenan Ferrell's Motions in Limine

### A. Motion to Admit Confession of William Woods

Defendant Ferrell's first motion in limine (Doc. 107) seeks to admit the third party confession of William Woods. This motion is denied for the reasons discussed above with respect to the Government's second motion in limine.

### B. Motion to Bar Evidence of Out of State Schemes

Defendant Ferrell's second motion in limine (Doc. 118) seeks to bar evidence of alleged out of state Medicare schemes pursuant to Federal Rule of Evidence 404(b). Ferrell's third motion in limine (Doc. 136) seeks to bar the testimony of Dr. Shriver. These motions are denied for the reasons set forth in the Court's discussion above granting the Government's motion to introduce evidence of Defendants' conduct and statements.

## VI. The Government's Motion to Narrow the Indictment as to Defendant Ferrell

This motion (Doc. 124) is granted for the reasons set forth in open court.

## CONCLUSION

For the reasons set forth above and for the reasons stated on the record in the two final pretrial conferences held by the Court:

1. Ferrell's motion to dismiss the indictment is denied;

2. the Government's motion in limine to introduce excerpts of each Defendant's statement to law enforcement and to bar introduction by the Defense of the remainder of each statement is granted in part ant taken under advisement in part;

3. the Government's motion in limine to bar the defense from introducing any recorded statements made by Provider A is granted;

4. the Government's motion in limine to bar evidence or argument by Defendants of the possible penalties they face if convicted is granted;

5. the Government's motion in limine for prior notice concerning Rule 608(b) impeachment is granted;

6. the Government's motion in limine to bar discovery requests or comments regarding discovery in the jury's presence is granted;

7. the Government's motion in limine for a pretrial ruling on the admissibility of Inner Arts and Take Action Progress Notes is granted;

8. the Government's motion in limine to bar cross examination of government witnesses asking those witnesses to speculate as to Defendant Ferrell's knowledge is granted on a preliminary basis;

9. the Government's motion pursuant to *United States v. Santiago* is granted;

10. the Government's motion to introduce evidence of Defendants' conduct and statements is granted in part and taken under advisement in part;

11. Ferrell's motion in limine to admit the third-party confession is denied;

12. Ferrell's motion in limine to bar evidence of alleged out-of-state Medicare schemes is denied;

13. Ferrell's motion in limine to bar the testimony of Dr. Shriver is denied; and

14. The Government's motion to narrow the indictment as to Defendant Ferrell is granted.


Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date:  June 12, 2013