IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | 11 CR 595 |
| ) | |
| BRYCE WOODS, ) | Judge Virginia M. Kendall |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

A jury found Bryce Woods guilty of six counts of health care fraud. (Dkt. No. 170.) The nine-count indictment alleged that Woods and Keenan Ferrell submitted false claims for psychotherapy services purportedly rendered by Ferrell. (Dkt. No. 1.) The Government dismissed counts five, six, and seven prior to trial. (Dkt. No. 154.) The jury returned a verdict of guilty as to the remaining six counts against Woods. Woods now moves for judgment of acquittal under Fed. R. Crim. P. 29 based on the sufficiency of evidence with respect to his knowledge or intent. Woods also moves for a new trial under Fed. R. Crim. P. 33 based on inaccurate evidence presented to the jury and summary charts admitted into evidence. According to Woods, this evidence denied him a fair trial. For the reasons stated herein, this Court denies Woods' motions.

**I.    The Record Contained Sufficient Evidence to Support of the Jury's Verdict**

A motion for judgment of acquittal challenges the sufficiency of the evidence against a defendant. Fed. R. Crim. P. 29. "A defendant who makes an insufficient evidence claim 'faces a nearly insurmountable hurdle.' " *United States v. Tucker*, 737 F.3d 1090, 1092 (7th Cir. 2013) (citing *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009) (quoting *United States v.*

*Pulido*, 69 F.3d 192, 205 (7th Cir. 1995))). When considering a motion for judgment of acquittal, a court must view all facts in the light most favorable to the government and ask "whether the record contained sufficient evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt." *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007).

To prove that Woods committed health care fraud, the Government had to show that there was a scheme to defraud a health care benefit program, that Woods knowingly and willfully executed that scheme with respect to each count, and that he acted with intent to defraud. *See* 18 U.S.C. § 1347(a); *see also United States v. Chhibber*, 741 F.3d 852, 858-59 (7th Cir. 2014) (discussing 18 U.S.C. § 1347(a)) *and United States v. Natale*, 719 F.3d 719, 739-41 (explaining that health care fraud statutes require an intent to deceive). Here, Woods argues that the Government did not present sufficient evidence that he knowingly executed the scheme or that he acted with intent to defraud. According to Woods, he did not understand Medicare's rules and he only followed his employer's practices.

But the record contains sufficient evidence from which the jury could find that Woods had the requisite knowledge and intent. According to Special Agent James O'Leary, Woods told O'Leary that he was familiar with Medicare's "incident to" policy, which required Ferrell to be on site when rendering "incident to" services billed to Medicare. (Trial Tr. at 516:8-22.) Woods also told O'Leary that he submitted bills to Medicare for Inner Arts and Take Action. (Trial Tr. at 514:21-25.) Inner Arts was a company where Woods served as treasurer and company director (Dkt. No. 165, Stip. No. 1) and Take Action was a non-profit where Woods served in various capacities (Dkt. No. 165, Stip. No. 2). A number of the bills Woods submitted misrepresented the service provider as Ferrell and overstated the length of the session provided. Text messages

and progress notes submitted to Woods indicate that he knew that Ferrell did not provide these services.

Based on this evidence, a reasonable jury could find that Woods knowingly and willfully executed the scheme to defraud Medicare. This evidence also is sufficient to support a finding that Woods acted with intent to defraud. Circumstantial evidence and inferences drawn from the scheme itself can establish specific intent to defraud. *See United States v. Rucker*, 738 F.3d 878, 884 (7th Cir. 2013) (explaining that circumstantial evidence corroborated with documentary evidence can establish knowing participation in scheme to defraud). Further, Woods covered all of his personal expenses with money from Inner Arts' and Take Action's accounts. (Trial Tr. 527:21-528:2.) Such financial gain provides further evidence of his intent to defraud. *See United States v. White*, 737 F.3d 1121, 1130 (7th Cir. 2013) ("Intent to defraud requires a wilful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another.") (quoting *United States v. Britton,* 289 F.3d 976, 981 (7th Cir.2002)). In view of this evidence, it does not matter that Woods did not sign a certification that he would follow Medicare's rules as Ferrell has done. The absence of a certification regarding Medicare's rules such as that signed by Ferrell indicates only that there is perhaps less evidence of Woods' intent to defraud—it does not mean that there was insufficient evidence.

Because there is sufficient evidence to support the jury's findings with respect to Woods' knowing and willful execution of the scheme and his intent to defraud, this Court denies Wood's motion for judgment of acquittal.

II.   **The Interests of Justice Do Not Require a New Trial Because There Was No Prejudicial Effect on the Jury**

A court may vacate a judgment and grant a new trial where the interests of justice so require. Fed. R. Crim. P. 33(a). "A defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006). Here, Woods claims that that an error concerning the death of at least one and as many as five patients prejudiced the jury. According to Woods, information contained in exhibits related to deceased patients were out of proportion and Woods' prior stipulation regarding the exhibits imbued them with undue credibility.

The Government presented evidence that Woods billed Medicare for services provided to seventeen purportedly deceased patients. During trial, the Government learned from Woods' counsel that one of the seventeen purportedly deceased patients was still alive. The Government then reduced the number of deceased patients that Ferrell allegedly billed Medicare for to twelve, which matched the number of death certificates produced during discovery and admitted into evidence during trial. The Government recalled the witness who had previously testified about the deceased patients and she explained the error. (Trial Tr. 921:20-923:15.)

Woods' counsel cross-examined the witness on the deceased patients—to include when she learned of the mistake, how the mistake may have occurred, and what she did to correct the mistake. During closing arguments, Woods' counsel argued to the jury that half of the statements originally made concerning billing deceased patients were incorrect and questioned the reliability of the data presented in view of the mistakes made with respect to the deceased patients. Such opportunities, to cross-examine and to argue, are key to a fair trial. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1083 (7th Cir. 1997) ("The key to a fair trial is opportunity to use the appropriate weapons (rebuttal evidence, cross-examination, and argument)

to meet adverse materials that come to the tribunal's attention." (citation and quotation omitted).) Because the Government's witness admitted her error, corrected it, and was subject to cross-examination on it, there is no reasonable possibility that the error concerning the number of deceased patients improperly influenced the jury.

Given the testimony concerning the corrected number of deceased patients, the revised exhibits admitted into evidence, and the efforts by Woods' counsel to capitalize on the Government's error, this Court finds that the evidence concerning deceased patients did not have a prejudicial effect on the jury. Indeed, the jury heard evidence that Ferrell billed Medicare for services provided to twelve deceased patients whose deaths were confirmed by death certificates. This evidence mitigates any error concerning the other five patients. This is not a case where the only evidence the Government presented concerning Woods billing Medicare for services provided to deceased patients was inaccurate. Rather, only a portion of the evidence presented by the Government was in error. The twelve patients whose deaths were confirmed by death certificates mitigated any prejudicial effect that the Government's error may have caused. The same is true for Woods' acquiescence argument—especially in view of Woods' arguments attacking the Government's error and attempting to use the Government's error to cast doubt on other evidence.

Further, this Court did not err by not giving a limiting instruction. Although Woods' asked for a limiting instruction in his motion for a mistrial, this Court explained that it would provide the Government with the opportunity to remedy its error. (Trial Tr. at 861:17-22.) This Court told Woods that it would determine whether a curative instruction was necessary after the Government had the opportunity to remedy the error and Woods had an opportunity to challenge any attempt to remedy the error. (*Id.*) This Court then allowed Woods to take all the time he

5

needed to review the Government's proposed corrections and to prepare to address them. (Trial Tr. at 863:2-864:2.) After the close of the evidence, this Court addressed jury instructions with the parties. Woods' did not renew his request for a limiting instruction, which waived his right to challenge this Court's decision not to give it. *See United States v. Mansoori*, 304 F.3d 635, 652 (7th Cir. 2002) (defendant cannot complain about trial court's omission of cautionary instruction where he did not remind the judge to do so). Even if Woods had revisited his requested instruction, this Court would not have given it because it was not necessary. Testimony and revised exhibits remedied the Government's error, Woods' opportunity to challenge that evidence and to argue about the effects of the Government's error, and other evidence concerning twelve deceased patients for whom Woods billed Medicare made the instruction unnecessary. Therefore, the interests of justice do not require a new trial based on the Government's error concerning the number of deceased patients.

Woods also claims that he did not receive a fair trial because this Court admitted certain "demonstrative evidence" as substantive evidence. Woods does not specify which admitted exhibits are the subject of his motion. Nor does Woods identify any discrepancies between the testimony or the underlying documents and the summary charts admitted into evidence. This alone is sufficient reason to deny his motion. *See United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005) ("In this circuit, unsupported and undeveloped arguments are waived.")

Woods claims that "the exhibit did not truly and accurately portray what it purported to portray, and was not necessary to assist the government witness in explaining her testimony to the jury." The former is simply not true. The Government introduced four bar graphs that compiled data concerning the amounts and sources of deposits into various accounts, the amounts billed to various Current Procedural Terminology ("CPT") codes, the amounts paid to

6

various CPT codes, and the number of claims submitted for various CPT codes. The bars on the graphs were to scale and accurately depicted the differences between the categories of data reported. For instance, a bar representing $1,214,704.84 was nearly twelve times larger than a bar representing $102,648.34. Woods true concern appears to be that the information that is not favorable to him dwarfs the other information on the charts. But the size of each bar is a function of the underlying data, which the bar graphs accurately reflect. As accurate depictions of the underlying data, the bar graphs are not argumentative and are not unduly prejudicial.

Given the volume of data reflected in the bar graphs, this Court finds that they were helpful to the jury. Under Fed. R. Evid. 1006, a party "may use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court." Although the underlying data was admitted into evidence, the bar graphs provided the witness with an efficient means of conveying her testimony to the jury. Therefore, the interests of justice do not require a new trial based on the proper admission of summaries or charts under Fed. R. Evid. 1006.

## **CONCLUSION**

For the reasons stated herein, this Court denies Woods' motion for judgment of acquittal and his motion for a new trial.

```
_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois
```

Date:  May 14, 2014